﻿Citation Nr: AXXXXXXXX
Decision Date: 07/25/19 Archive Date: 07/25/19

DOCKET NO. 190708-11027
DATE: July 25, 2019

REMANDED

Entitlement to compensation under 38 U.S.C. § 1151 for residuals of the surgical repair of an incisional hernia is remanded.

REASONS FOR REMAND

The Veteran had active service from March 1965 to March 1967.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for veterans dissatisfied with VA’s decision on their claim to seek review. 

In May 2018, the Veteran opted to participate in the Rapid Appeals Modernization Program (RAMP), VA’s test program for implementing the AMA. The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. An October 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form and denied the Veteran’s claim under 38 U.S.C. § 1151. In November 2018, the Veteran timely appealed the rating decision to the Board, requesting that his appeal be placed on the Board’s direct docket. See 38 C.F.R. § 3.301.

Entitlement to Compensation under 38 U.S.C. § 1151 for Residuals of Post-Surgery Infection Hernia Surgery Is Remanded

The Veteran contends that he is entitled to service connection for the residuals of an August 2010 surgery to repair an incisional hernia. He states VA failed to exercise the degree of care that would normally be expected of a reasonable health care provider. See 38 U.S.C. § 1151(a); 38 C.F.R. § 3.361(c)(1), (d)(1). The Veteran does not contend that VA caused the hernia or that it is related to his active service, and he does not contend that VA provided care without his informed consent; he contends that VA’s care was negligent when performing the hernia surgery and treating his post-surgery infection.

A chronology of the events provides useful context for the Veteran’s claims, and the following chronology draws from a July 2011 case report created by J.S.B., RN. He was admitted to a VA medical center in South Carolina on August 16, 2010 for surgical removal of a small fatty tumor and repair of an incisional hernia caused by a drainage port associated with a 1994 prostatectomy. (The Veteran’s claims focus exclusively on the hernia repair and does not arise from the removal of the fatty tumor.) Dr. D.M.C. supervised the surgery, which lasted approximately four hours due to difficulties that arose during the procedure. Dr. D.M.C. mentioned the difficulties when speaking with the Veteran’s spouse following the surgery, but he did not specifically state what they were to the Veteran’s spouse or the Veteran. The Veteran was discharged on August 19, 2010. 

On the evening of August 25, 2010, the Veteran reported to an emergency department reporting purulent, foul smelling draining from his hernia-repair incision. He reported pain, chills, fever, and poor appetite. X-rays of the abdomen showed air and fluid in the lower quadrant of the Veteran’s abdomen, but no follow-up CT scan was ordered. The Veteran was discharged during the early morning hours of August 26, 2010 and instructed to follow-up if his symptoms worsened. The Veteran’s records do not show a prescription for oral antibiotics. The Board notes a July 2016 letter from the manufacturer of the pelvic mesh used in the Veteran’s August 16 2010 surgery recommended aggressive treatment for any post-surgery infections. 

On August 27, 2010, Dr. A.S.W. examined the Veteran’s surgical incision. There was some white discharge and no smell, and Dr. A.S.W. concluded that the discharge was likely fat necrosis and there was no need for antibiotics to be prescribed at that time. No wound cultures were performed.

On the morning of September 7, 2010, the Veteran presented to the emergency department with redness, swelling and pain at the incision site, chills, and a fever. Dr. D.A.Y. noted redness, fluctuance, tenderness around the incision, and a purulent discharge from the incision. Following a CT scan, blood labs, and other tests, the Veteran was diagnosed with a post-operative infection. He was admitted for surgery and intravenous antibiotics were started. Later that day, Dr. D.M.C., the surgeon who oversaw the Veteran’s hernia repair surgery, performed an incision and drainage of the Veteran’s wound. 

As of September 7, 2010, there was confusion regarding whether the Veteran’s colon was perforated; however, fecal matter was detected on September 9, 2010. Intravenous antibiotics were discontinued, oral antibiotics were started, and the Veteran was discharged home with directions to eat normally and to complete bowel preparation on September 13, 2010. He was scheduled for a follow-up surgery on September 14, 2010.

On September 14, 2010, the Veteran underwent an exploratory laparotomy, takedown of coloatmospheric fistula, segmental resection of descending colon and mid-small bowel, removal of the infected hernia mesh, and reconstruction of abdominal wall using biologic mesh. The Veteran was transferred to the intensive care unit following his surgery and received Zosyn antibiotic therapy from September 14, 2010 to September 19, 2010.

The Veteran remained hospitalized at the VA medical center in South Carolina following the surgery. On September 22, 2010, indications of an active infection process were seen in the Veteran’s wound. On September 24, 2010, a wound care nurse requested cultures of a discharge from the Veteran’s surgical wound, which confirmed an infectious process was underway. Dr. D.M.C. did not believe the infection as systemic in nature and focused on local rather than systemic treatment.

Frustrated with the care that the Veteran was received, his spouse checked him out of the VA medical center and transferred him to a non-VA medical center in the vicinity on October 4, 2010. He was immediately placed on intravenous antibiotics. On October 5, 2010, Dr. D.L. debrided, drained, and irrigated the Veteran’s surgical wound. Necrotic skin, fat, and fascia were removed. A French drain was placed, and the wound was packed and dressed. The Veteran received aggressive antibiotic therapy following the October 5th procedure. The Veteran healed fairly quickly, and he was discharged from the non-VA medical center on October 13, 2010. 

Two VA opinions have been obtained during the pendency of his claim. In a July 2014 opinion, an examiner concluded that the Veteran’s complications from his hernia-repair surgery were less than likely the result of carelessness, negligence, lack of skill, or similar incidence of fault on the part of the attending VA personnel. The examiner reasoned that infection of incision or mesh, injury to bowel or bladder requiring further surgery, seroma, and post-operative pain were all risk factors outlines in the consent form that the Veteran signed. 

The same examiner was asked to provide an addendum opinion in October 2016. She concluded that no change or addendum to her rationale was necessary.

The October 2018 RAMP decision failed to obtain an adequate medical opinion thereby failing in its duty to assist. The July 2014 VA opinion addresses the disclosure of the risks of surgical site infection and follow-up surgeries due to injury to the bowel and/or bladder. However, the examiner did not address whether the Veteran received acceptable care following the development of the surgical site infection. Among the Veteran’s central contentions is that VA did not prescribe oral antibiotics when he first presented to the emergency room with a surgical site infection on August 25, 2010. A remand is warranted under Rule 802(a) is needed to obtain an addendum opinion. Specifically, an opinion is needed on whether the course of treatment for the Veteran’s surgical site infection was careless or negligent, lacked proper skill, contained error in judgment or a similar instance of fault in VA’s furnishing hospital care to the Veteran.

The matter is REMANDED for the following action:

Provide the Veteran’s claim file to a qualified clinician other than the examiner responsible for the July 2014 and October 2016 opinions. The claims file and this remand must be reviewed, and such review should be noted in the opinion.

The examiner must provide an addendum opinion on the following:

(a.) Is it at least as likely as not (50 percent or greater probability) that the Veteran incurred additional disability as a result of VA medical care from August 16, 2010 through October 4, 2010? If additional disability exists, the examiner is to note the nature of such additional disability.

(b.) If additional disability exists, is it at least as likely as not (50 percent or greater) that such was due to carelessness, negligence, lack of proper skill, error in judgment or similar instance of fault on the part of VA?

In providing this opinion, the examiner must address the care that the Veteran received to treat his post-surgical infection. In particular, the examiner must address whether the timing of the administration of antibiotics following the development of a surgical site infection 

was careless, negligent, lacked proper skill, or constituted error in judgment on the part of VA providers. The examiner should also address a July 2011 report from J.S.B., RN discussing the Veteran’s hernia-repair surgery and post-surgical complications.

 

MICHAEL A. HERMAN

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Douglas M. Humphrey, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.